IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| MAZUMA CAPITAL CORP, a Utah corporation,<br><br>    Plaintiff,<br><br><br><br>        vs.<br><br><br><br>BLUEWATER EQUIPMENT RENTALS, INC., et al.,<br><br>        Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br><br><br><br><br>Case No. 2:08-CV-538 |

Presently before the Court is Mazuma Capital Corp's motion for summary judgment. The Court heard oral argument on this matter on March 4, 2009.  John Beckstead represented Mazuma Capital Corp, and Daniel Brough represented Bluewater Equipment Rentals, Inc.  The Court took the matter under advisement at that time and now issues this order granting in part, and denying in part, Mazuma's motion.

## BACKGROUND

This case arose due to a failed leasing arrangement between Mazuma and Bluewater. The leasing arrangement commenced December 4, 2006, when Mazuma and Bluewater executed a master lease agreement and a lease schedule.  Pursuant to the parties' agreement, Mazuma

purchased and leased welding machines, compressors, tuggers, and air spiders, valued in excess of $1.4 million, to Bluewater.  This equipment is used in the off-shore oil drilling industry.

The master lease agreement described the general terms of the parties' leasing arrangement.  Of particular importance in this case are provisions relating to payment terms, financial reporting requirements, and remedies available to Mazuma upon default.  Aside from specifying general payment terms, the master lease agreement required Bluewater to provide Mazuma with audited financial statements within 90 days of Bluewater's fiscal year end and copies of its quarterly financial statements within 45 days of the end of each fiscal quarter.  The master lease agreement states that failure by Bluewater to deliver to Mazuma any document or record required by the lease, or failure to remit any payment required by the lease within 10 days of its due date, will be considered an "Event of Default."  Upon the occurrence of any Event of Default, the agreement provides Mazuma with a number of remedies, including the right to cancel the lease, accelerate payments, or repossess the lease property.

On May 3, 2007, the parties executed an amended lease schedule pursuant to which Mazuma agreed to lease the equipment to Bluewater for an initial term of 36 months.  For the first 12 months of the lease, Bluewater agreed to pay $27,105.25 per month.  For months 13 through 36, and for any applicable continuation periods, the rent increased to $48,226.23 per month.  Pursuant to Section 12 of the lease schedule, Mazuma agreed as follows: after receiving 12 base period payments, Mazuma will "use its commercially accepted best efforts to rewrite [the lease] at more favorable terms acceptable to [Bluewater] provided however, [Mazuma] is able to obtain a bona fide non-recourse approval from a third party underwriter acceptable to [Mazuma] at its sole discretion."  Eggan Decl. in Supp. of Summ. J. Ex. C.

-2-

According to Bluewater, this "Re-Write" provision was included in the lease because Bluewater informed Mazuma during negotiations that it could not afford and would not pay the lease payments as specified in the lease schedules for months 13 through 36 of the lease. Despite this, Bluewater signed the lease agreements and took possession of the equipment. The lease term commenced July 1, 2007.

Bluewater's failure to comply with the master lease agreement began before the lease term even commenced. The master lease agreement required Bluewater to provide to Mazuma by March 31, 2007, an audited financial statement for the fiscal year ending December 31, 2006. Bluewater failed to produce even a draft of the statement until almost a full year later, on March 14, 2008. Likewise, Bluewater failed to timely provide its quarterly statements for the first two fiscal quarters of 2007 as specified in the master lease agreement. Although Bluewater eventually produced the first quarterly statement required by the master lease agreement in June 2007, to date Bluewater has failed to produce most of the quarterly statements. Furthermore, despite repeated requests by Mazuma, Bluewater has failed to provide an audited financial statement for the fiscal year ending December 31, 2007.

Bluewater's failure to comply with the master lease agreement has not been limited to its failure to produce required financial statements. On January 7, 2008, Mazuma informed Bluewater that property taxes related to the leased equipment were due. Mazuma requested that Bluewater remit payment as soon as possible. Bluewater did not remit payment until March 27, 2008, and only after Mazuma assessed a finance charge. Although Bluewater paid the amount outstanding for taxes, it has not yet paid the finance charge. Additionally, Bluewater failed to pay its April 2008 payment until June 10, 2008. This payment was over a month late, and since

-3-

that payment, Bluewater has refused to make any monthly payments to Mazuma or to pay the finance charge relating to the property taxes.

Due to Bluewater's failure to comply with the lease terms, Mazuma sent a notice of default letter to Bluewater on April 25, 2008. The letter stated that Events of Default under the lease had occurred and were continuing, and that if Bluewater failed to make the April 2008 payment and finance charge, Mazuma would take legal action. In response, Bluewater requested either that Mazuma restructure the lease terms or that Mazuma provide Bluewater with terms regarding payoff of the lease. Mazuma declined Bluewater's request to restructure the lease. In the end, Mazuma notified Bluewater on July 22, 2008, that it was cancelling the lease. Mazuma demanded that Bluewater make the lease property available to Mazuma for disposal, but Bluewater refused.

Mazuma filed the present action on July 16, 2008, alleging as its primary cause of action that Bluewater breached the terms of the lease agreement. Bluewater responded by filing counterclaims against Mazuma for breach of the lease agreement, breach of the implied covenant of good faith and fair dealing, and fraud in the inducement. The main thrust of Bluewater's defense and counterclaims is that its failure to perform under the lease agreement has been excused because Mazuma breached the lease agreement by failing to re-write the lease on more favorable terms to Bluewater. Bluewater does not dispute, however, that it failed to provide financial documents required by the lease, was informed by Bluewater on March 14, 2008, and again on March 28, 2008, that Mazuma could not address rewriting the lease until Bluewater provided certain financial data and made certain payments required by the lease, and that it did

-4-

not provide those documents and all payments as required by the agreement and demanded by Mazuma.

## DISCUSSION

I.  **Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment is only appropriate where the evidence shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. Proc. 56(c). When applying this standard, the court must "examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).

II.  **The Parties' Contractual Commitments**

This case can be resolved by answering one simple question: What does the contract say? According to Bluewater, the contract at issue says that Mazuma must renegotiate the lease despite its failure to comply with certain terms of the lease agreement.  According to Mazuma, the contract says that failure by Bluewater to comply with certain lease provisions will allow it to pursue any number of remedies and will excuse its obligation to rewrite the lease.  Mazuma is correct.  Bluewater signed an agreement that by its very terms required it to provide financial documents to Mazuma.  That very document states that failure by Bluewater to do so will provide Mazuma with an option to terminate the contract.  Furthermore, the agreement signed by Bluewater states in no uncertain terms that rent *will* increase after the first 12 months of the lease, subject to a *possible* rewrite providing more favorable terms.  While the penalties being

-5-

imposed on Bluewater seem quite severe, Bluewater must recognize that it agreed to the terms of the lease.

The master lease agreement states that any act by Bluewater considered an Event of Default will provide Mazuma with a number of remedies, including the right to completely cancel the entire lease.  The essence of this provision is that once Bluewater causes an Event of Default to occur, Mazuma is entitled, upon its decision to do so, to avoid any further contractual obligations.  Bluewater does not deny that it engaged in several acts that each meet the definition of Event of Default as defined by the master lease agreement.  The master lease agreement unequivocally states that failure by Bluewater to deliver any document required under the master lease agreement, or failure to make any payment required under the lease agreement, will be considered an Event of Default.  Likewise, the terms of the master lease agreement unequivocally require Bluewater to provide audited yearly financial statements and unaudited quarterly financial statements to Mazuma.  Bluewater does not dispute that it failed to provide many of the required financial documents, or that it failed to pay a fee required under the lease. Bluewater certainly, then, cannot dispute that it engaged in acts constituting Events of Default as defined by the lease.

On July 22, 2008, Mazuma informed Bluewater that Mazuma was pursuing retained remedies and cancelling the lease.  This action by Mazuma was authorized by the master lease agreement and excused Mazuma's further contractual obligations.  Although not explicit in the agreement, the implication of Mazuma's remedies is that its obligation to begin trying to rewrite the lease at more favorable terms to Bluewater was excused upon its election to pursue its retained right to cancel the agreement.

Bluewater has argued, however, that it was in substantial compliance with the lease agreement at the time 12 base period payments were received by Mazuma, thus obligating Mazuma to begin the rewrite process.  Because Mazuma did not elect to cancel the lease until July 22, 2008, one month after receiving the twelfth base period payment, one could entertain the notion that Mazuma's failure to immediately begin rewriting the lease upon receipt of the twelfth base period payment constituted a breach of the agreement.  Section 12 of the amended lease schedule merely states that "[a]fter Twelve (12) Base Period payments have been received . . . [Mazuma] agrees to use its commercially accepted best efforts to rewrite this Schedule." Eggan Decl. in Supp. of Summ. J. Ex. C.  Because this provision does not specify a specific time frame for Mazuma's required action, this issue could best be left to a fact-finder.  A fact-finder determination is not, however, required in this case.  As will be discussed in detail below, Utah case law indicates that Bluewater's breaches of the lease agreement were material, relieving Mazuma of any obligation to begin rewriting the lease.

**III.     Alleged Material Breaches**

Utah law is well settled that a material breach of a contract by one party will relieve a duty of further performance by the other contracting party.  *Aquagen Int'l, Inc. v. Calrae Trust*, 972 P.2d 411, 414 (Utah 1998).  For this reason, Mazuma contends that Bluewater materially breached the lease agreement by failing to provide financial statements and by failing to make payments required under the lease, and that these breaches relieved Mazuma of its duty to try to rewrite the terms of the lease agreement.  Bluewater, on the other hand, contends that although it breached some terms of the lease agreement, its breaches were not material and therefore Mazuma had a duty to have a rewritten lease agreement in effect on July 1, 2008.

The Court's jurisdiction in this matter is founded on diversity.  In such a case, the Court must ascertain and apply Utah law.[1]  *See Wankier v. Crown Equipment Corp.*, 353 F.3d 862, 866 (10th Cir. 2003) (quoting *Huddleston v. Dwyer*, 322 U.S. 232, 236 (1944)).  If a controlling Utah decision does not exist, the Court must predict what the Utah Supreme Court would decide unless a panel of the Tenth Circuit Court of Appeals has issued a decision interpreting applicable Utah law.  *Id.*

The Utah Court of Appeals has stated that "[w]hether a party has materially breached a lease is generally a question of fact for the fact finder."  *Olympus Hills Shopping Center, Ltd. v. Smith's Food & Drug Centers, Inc.*, 889 P.2d 445, 458 (Utah Ct. App. 1994).  Similarly, the Court of Appeals stated in *Coalville City v. Lundgren*, 930 P.2d 1206, 1209 (Utah Ct. App. 1997), that "[w]hat constitutes a material breach is a question of fact."  Despite these statements, however, Mazuma cites *Coalville City* for the proposition that where facts surrounding a breach are undisputed, whether the breach is material can be resolved as a matter of law by a court.

In *Coalville City*, the Utah Court of Appeals cited an Oregon Court of Appeals decision as support for its determination that materiality is a question of fact.  *Id.*  In so doing, the Utah court included, within a parenthetical, a quote from the Oregon case stating that "[g]enerally, whether a breach is material is a question of fact to be decided by the jury, unless the facts are undisputed; then it is a question of law for the court."  *Id.* (quoting *McKeon v. Williams*, 799 P.2d 198, 200 (Or. Ct. App. 1990)).  Mazuma's representation to the Court that this quote is a definite statement of Utah law is somewhat disingenuous.  The Court is unable to find any Utah

---

[1]The master lease agreement also provides that Utah law will apply.

case law directly holding that materiality can be decided as a matter of law. This is not to say, however, that Mazuma's argument is incorrect.

The parties have directed the Court's attention to two Tenth Circuit decisions stating that whether a breach is material "is a mixed question of fact and law which can be resolved as a matter of law on summary judgment if reasonable minds cannot differ." *Resolution Trust Corp. v. Federal Savings and Loan Insurance Corp.*, 25 F.3d 1493, 1503 (10th Cir. 1994); *see also Zenith Drilling Corp. v. Internorth, Inc.*, 869 F.2d 560, 564 (10th Cir. 1989). But neither of those cases interpreted or applied Utah law. Therefore, the Court must attempt to predict whether the Utah Supreme Court would rule that materiality can be determined as a matter of law when facts surrounding a breach are undisputed.

The *Olympus Hills* case is informative. In that case, a Utah trial court allowed a jury to determine whether the closure of a leasehold location for 63 days was a material breach of a continuous operations clause of a lease. *Olympus Hills*, 889 P.2d at 458. Although one of the parties asserted on appeal that the closure was a material breach of the lease as a matter of law, the Utah Court of Appeals held that the evidence presented during trial could cause reasonable minds to differ concerning whether the closure was a material breach. *Id.* at 458-59. The issue of materiality was therefore properly placed before the fact finder. *Id.* Although the court did not directly address the reciprocal situation where reasonable minds could not differ, the court's reasoning suggests that where reasonable minds cannot differ concerning materiality, materiality can be determined as a matter of law. A number of courts have held similarly. *See, e.g., Zenith Drilling Corp.*, 869 F.2d at 563; *Resolution Trust Corp.*, 25 F.3d at 1502; *Gibson v. City of Cranston*, 37 F.3d 731, 735-36 (1st Cir. 1994) (discussing Rhode Island law and stating that "if

the materiality question . . . admits of only one reasonable answer (because the evidence on the point is either undisputed or sufficiently lopsided), then the court must intervene and address what is ordinarily a factual question as a question of law"); *McKeon*, 799 P.2d at 200 (holding that failure to pay rent could be nothing other than a material breach under the terms of a lease agreement because it "substantially undermined the basis for the parties' lease agreement").

Based on the above authorities, the Court finds that the Utah Supreme Court would likely hold that materiality can be determined as a matter of law at the summary judgment phase if the undisputed facts lead to only one reasonable conclusion. In this case, then, the issue is whether reasonable minds can differ on the question whether Bluewater's breaches of the lease agreement were material.

Mazuma alleges that Bluewater has committed many material breaches of the lease agreement. Specifically, Mazuma states that by the time it had received 12 base period payments, Bluewater had failed to provide its 2007 audit, had failed to provide multiple sets of quarterly financial statements, and had failed to pay a late fee on the 2007 property taxes. According to Mazuma, each of these failed actions by Bluewater was an Event of Default under the lease and therefore material breaches of that agreement. As discussed above, the Court agrees.

The issue, then, becomes whether Bluewater's acts of default under the lease agreement constituted material breaches of the lease agreement, as a matter of law. The Utah Court of Appeals has recognized that although the materiality of a breach is not easy to define, a breach that "defeats the very object of [a] contract or is of such prime importance that [a] contract would not have been made if default in that particular had been contemplated" is certainly

-10-

material.  *Coalville City*, 930 P.2d at 1210 (quoting *Polyglycoat Corp. v. Holcomb*, 591 P.2d

449, 451 (Utah 1979)) (internal quotations omitted).  In this case, Bluewater's acts may not fit

exactly within this definition, but given the terms of the lease, the definition appears to fit.

The master lease agreement states that any act by Bluewater that is considered an Event

of Default will provide Mazuma with a number of remedies, including the right to completely

cancel the entire lease.  This bargained-for, unfettered right to avoid all further performance by

Mazuma demonstrates that the parties created a group of breaches (i.e., any "Event of Default")

that are *per se* material under the lease.  Given the structure of the parties' own agreement, it is

difficult to see how such an act could be considered anything but material.  And Bluewater does

not dispute that it failed to provide the 2007 audit, a number of quarterly financial statements,

and payment of a late fee.  By engaging in these acts or omissions, Bluewater provided Mazuma

with the option to end performance under the agreement and thus materially breached the lease

agreement.[2]  Mazuma was therefore relieved of further performance, including its obligation to

rewrite the lease agreement on more favorable terms to Bluewater.

Even were the Court to find that the issue of materiality in this case is a question of fact,

Bluewater would still not be entitled to the relief it seeks.  Bluewater argues that although it

committed some breaches of the lease agreement, ultimately Mazuma materially breached the

agreement by failing to have a rewritten lease agreement in place on July 1, 2008.  The primary

---

[2] Bluewater attempts to defend itself by stating that Mazuma represented to it on multiple occasions that the rate at which Bluewater was providing the quarterly statements to Mazuma was acceptable.  Specifically, Bluewater refers to an email in which Mazuma stated that some internal statements would "suffice for now."  Petty Decl. in Supp. of Summ. J. Ex. B.  Bluewater takes this statement entirely out of context, however.  This statement was made by Mazuma's Doug Petty after Bluewater's Mark Nelson asked  "[w]ill our internal 12/31 statements suffice **until** I can get [the 2007 interim statements] for you?"  *Id.* (emphasis added).  Furthermore, Mr. Nelson also represented that he could provide the 2007 interim statements within several days.  In this context, clearly Mr. Petty was not stating that Mazuma was satisfied with the rate at which Bluwater was providing its financials.  Nor was Mr. Petty relieving Bluewater of its contractual duty to provide interim statements within 45 days of the end of the quarter.

basis for this argument is that Bluewater claims it stated at the outset of negotiations with
Mazuma that it could not afford the payments required for months 13 through 36 of the lease
term.  According to Bluewater, this was the precise reason the rewrite provision was included in
the lease.

Surprisingly, neither party has addressed the applicability of the integration clause
embodied within the master lease agreement.  That clause states that the master lease agreement
and all applicable lease schedules

> shall supersede all prior communications, representations, agreements, and
> understandings, . . . and constitute the entire understanding and agreement between
> [Mazuma] and [Bluewater] . . . and there is no understanding or agreement, oral or
> written, which is not set forth herein or therein.

Eggan Decl. in Supp. of Summ. J. Ex. A.

Integration clauses such as the one embodied in the master lease agreement are often
incorporated in agreements to signify that the agreement is completely integrated—meaning that
the agreement must be interpreted on its face without reference to evidence concerning
preliminary negotiations or side deals.  *See Tangren Family Trust v. Tangren*, 2008 UT 20, ¶ 13,
182 P.3d 326.  Where a contract contains a clear integration clause, "parol evidence is
admissible only to clarify ambiguous terms; it is 'not admissible to vary or contradict the clear
and unambiguous terms of the contract.'"  *Id.* ¶ 11 (quoting *Hall v. Process Instruments &
Control, Inc.*, 890 P.2d 1024, 1026-27 (Utah 1995)).[3]

---

[3] Notably, extrinsic evidence to the contract may be admissible in certain situations, such as where a party alleges
that the contract can be avoided due to duress, fraud, or illegality.  *Tangren*, 2008 UT 20, ¶ 15.  Utah law suggests,
however, that such extrinsic evidence is only admissible to prove the invalidity of a contract—not that a party has
breached a provision of that very contract.  *See id.*  In other words, an integration clause will only prevent the
consideration of extrinsic evidence to prove, clarify, contradict or supplement an integrated agreement.  *See id.*  The
clause will not, however, bar the consideration of extrinsic evidence that bears on the enforceability or validity of the
entire agreement.  *See id.*  As Bluewater has alleged a fraud claim against Mazuma based on its claims that there was
a prior agreement concerning Bluewater's inability and unwillingness to pay the stated rate for months 13 through 36

In this case, the integration clause reveals that the parties intended the master lease and lease schedules to be considered completely integrated.  Therefore, the alleged discussions during negotiations will only be admissible if the disputed provisions in the master lease agreement are ambiguous.  They are not.

The re-write provision embodied within the initial lease schedule states as follows:

> [a]fter Twelve (12) Base Period payments have been received and on a semi annual basis thereafter, [Mazuma] agrees to use its commercially accepted best efforts to rewrite this Schedule at more favorable terms acceptable to [Bluewater] provided however, [Mazuma] is able to obtain a bona fide non-recourse approval from a third party underwriter acceptable to [Mazuma] at its sole discretion.

Eggan Decl. in Supp. of Summ. J. Ex. C.  This provision is susceptible to only one reasonable interpretation—after 12 payments have been received, Mazuma will *attempt* to rewrite the schedule at more favorable terms to Bluewater.  Nowhere in this provision does it guarantee that a rewrite *will* occur, as Bluewater claims.  In fact, the plain language allows for the possibility that a rewrite will not occur.  Taken in conjunction with the payment terms as incorporated by the agreement, Bluewater's claim that Mazuma breached the lease by failing to have a rewritten schedule in effect on July 1, 2008, completely lacks support.  Furthermore, Bluewater's argument that the parties agreed that Bluewater would not be liable for the $48,226.23 payment per month upon July 1, 2008, is completely without merit.

Finally, Bluewater's argument that Mazuma breached the lease agreement by failing to rewrite, or attempt to rewrite, the lease fails for one additional reason.  On March 14, 2008, upon a request by Bluewater to restructure the lease, Mazuma stated that it could not rewrite the

---

of the lease, this evidence may be considered regarding its fraud claim against Mazuma.  Since the applicable language of the lease agreement is unambiguous, however, such extrinsic evidence is not admissible to alter the terms of the lease agreement to show that Mazuma breached the agreement.

lease until it received the 2006 and 2007 audits and all payments due under the lease.  Mazuma

similarly stated to Bluewater on March 28, 2008, that after receipt of the 2006 audit, and after

Bluewater provided verification concerning who would be conducting the 2007 audit, its

underwriter would review the audit and advise Mazuma of what the underwriter was willing to

do as far as reworking the terms of the lease.  Given that Bluewater was placed on notice that

Mazuma would not begin the rewrite process until after it received the audits and payment for

the finance charge, and the fact that Bluewater has not provided the 2007 audit nor payment of

the finance charge, Mazuma had no duty to begin rewriting the lease as Bluewater requested.

Furthermore, even setting aside the fact that Bluewater refused to provide financial data as

required, Bluewater did not make its twelfth base period payment until June 10, 2007.  This

provided only a 20-day window for Mazuma to rewrite the lease before commencement of the

thirteenth month of the lease term.  During this time, Bluewater represented to Mazuma that it

was preparing to buy-out the lease.  As a practical matter, Mazuma had no reason to rewrite the

lease.

   The facts in this case are largely undisputed.  Bluewater repeatedly failed to comply with

several of the lease terms, refused to produce financial documents required by the lease

agreement, indicated that it wanted to buy-out the lease when Mazuma stated it could not rewrite

the lease, and has now refused to make any payment due under the lease for over ten months.

These undisputed facts lead to only one result—Bluewater materially breached the lease

agreement and Mazuma is entitled to summary judgment in its favor.

**IV.    Damages**

The master lease agreement states that upon default by Bluewater, Mazuma is entitled to a number of remedies, including cancelling the entire lease, declaring as immediately due all amounts due and payable, or to become due and payable under the lease, including amounts for continuation periods, and repossession of the lease property.  Mazuma seeks these remedies and requests damages in the amount of $1,774,282.35, plus interest, interest accrued in the amount of $101,020.92, and late fees in the amount of $2,092.96.  Mazuma calculates the figure pertaining to damages as follows:  $1,055,400.12 for accelerated monthly payments for weeks 13 through 36 of the lease, and $718,822.23 for accelerated monthly payments for the 18-month continuation period.  Mazuma also seeks reasonable attorneys' fees and expenses.  Bluewater contends that these remedies are improper.

Bluewater first alleges that disputed issues of fact concerning whether it agreed to pay Mazuma $48,226.23 for months 13 through 36 of the lease preclude a judgment in Mazuma's favor incorporating that amount.  As discussed above, however, the lease agreement is completely integrated and plain on its face.  The terms of the agreement clearly state that Bluewater agreed to pay $48,226.23 per month for months 13 through 36 of the lease.

Bluewater next argues that the rewrite provision cannot be harmonized with the $48,226.23 payment terms, and therefore the payment amount represents liquidated damages. According to Bluewater,

> at the end of 12 months, Bluewater has either made 12 monthly payments, or it has not.
> If it has, the lease is renegotiated, and Bluewater pays something less than $48,226.23 per
> month in base rent.  If it has not, the $48,226.23 per month becomes a component of
> damages that Bluewater must pay post-breach and post-default, and an amount that under

no circumstance would Bluewater have had to pay had it complied with the Lease
Agreement.

Bluewater's Mem. in Opp. to Summ. J. 25-26.  As previously discussed, however, this argument
is incompatible with the plain terms of the agreement.  Utilizing $48,226.23 for the monthly
damages calculation for months 13 through 36 of the lease is proper.

With regard to the $718,822.23 that Mazuma alleges Bluewater owes it for accelerated
payments pertaining to the continuation periods, Bluewater argues that it is not liable because it
did not agree, in the event of default, to compensate Mazuma for all continuation periods.
Bluewater further argues that it never contracted to pay an additional $718,822.23, has never
expressed any intent to continue the lease agreement, and that the automatic continuation
provision incorporated by the lease upon default acts as a liquidated damages provision.

The master lease agreement provides Bluewater with three options at maturity of the
initial lease period: (1) purchase of the property, (2) continuation of the lease for 12 additional
months, or (3) termination of the lease.  If an Event of Default has occurred under the lease,
however, the second option applies—continuation of lease for 12 additional months.   Therefore,
contrary to Bluewater's assertions, it did contract to compensate Mazuma for an initial
continuation period of 12 months if an Event of Default occurred.

Contrary to Mazuma's assertions, however, Bluewater did not contract to pay for an
additional six month continuation period upon default.  The master lease agreement provides that
at maturity of the first continuation period, and at maturity of each subsequent continuation
period, the lease will continue for six month periods unless either party provides advance written
notice otherwise.  This provision provides no reference to an Event of Default.  Based on this

provision, the initial 12-month continuation period is the only mandatory term upon default. Therefore, Mazuma's argument that an 18-month period should apply is without merit.  Indeed, extending the logic of this argument would suggest that if Bluewater has defaulted under the lease, Mazuma could require additional six month continuation terms without limit.

Although the master lease agreement is unambiguous on this point, Mazuma is not entitled to summary judgment.  As Bluewater argues, the provision discussed above allowing Mazuma to recover damages for lost lease payments during the initial continuation period results in a liquidated damages provision.  This is so because if Bluewater defaults during the base period and Mazuma accelerates payments, Bluewater is liable for a predetermined measure of damages relating to the initial continuation period.  In other words, but for the default, Bluewater would not be absolutely liable for the continuation period.  Because the damages attributable to the continuation period represents liquidated damages, Mazuma must show that the amount fixed reasonably forecasts damages caused by a breach, and that such damages are difficult to predict. *See Relance Ins. Co. v. Utah Dept. of Trans.*, 858 P.2d 1363, 1367 (Utah 1993).  Because Mazuma has not even addressed these factors, Mazuma's motion for summary judgment on this point is denied.

Mazuma also seeks a damages award that incorporates 18% interest.  The master lease agreement states that in connection with Mazuma's remedies under the lease, it is entitled to interest at the lesser of 18% per year or the highest percent permitted by law.  As this is a plain and unambiguous bargained-for provision in the parties' agreement, Mazuma is entitled to 18% interest on the amount owed by Bluewater.

With respect to late fees, Mazuma has not provided any basis or explanation for the late fees.  As Bluewater disputes the amount of late fees alleged by Mazuma, the Court denies Mazuma's motion for summary judgment in this regard.

The Court grants Mazuma's motion for summary judgment with respect to attorneys' fees and expenses.  The master lease agreement explicitly states that Bluewater will reimburse Mazuma for attorney fees and costs incurred by Mazuma to protect its interest in the property, to enforce the lease, to collect payments due under the lease, and relating to legal actions under the lease.  Once again, this is an unambiguous, bargained-for provision embodied within the lease and is enforceable against Bluewater.

Finally, Mazuma also seeks repossession of the lease equipment as provided for by the master lease agreement.  Bluewater claims, however, that allowing Mazuma to repossess the equipment while also awarding damages to Mazuma will result in a double recovery.  This position fails to appreciate Mazuma's representations to the Court and Mazuma's obligations under the master lease agreement.

The master lease agreement provides that following an Event of Default, Mazuma may seek repossession of the equipment.  Furthermore the lease provides that following repossession, Mazuma may sell, re-lease, or dispose of the equipment and apply the proceeds of such sale to the obligations of Bluewater, after deducting the costs incurred by Mazuma in conjunction with Bluewater's default.  This is precisely the course of action Mazuma seeks, and as this is a bargained for provision in the parties' agreement, the Court will enforce it.  Mazuma is entitled to immediate possession of the property described in the lease documents and directed to comply with the disposal process described in Section 20 of the master lease agreement.

In conclusion, Mazuma is presently entitled to the following:

• $1,055,400.12 based on future monthly payments, discounted at 7% per year; plus

• 18% interest on $1,055,400.12, accrued from July 22, 2008 (the date Mazuma first elected to pursue remedies provided by the master lease agreement), until the date this order is entered; plus

• interest on $1,055,400.12, at a rate of 18% per annum until the sum is paid; plus

• immediate possession of all lease equipment, with net proceeds upon disposal to be applied to Bluewater's outstanding obligations under the lease; plus

• reasonable attorneys' fees and costs.

## V.     Bluewater's Counterclaims

Mazuma has moved for summary judgment on Bluewater's counterclaims for breach of the lease agreement, breach of the implied covenant of good faith and fair dealing, and fraud in the inducement.  These alleged causes of action are largely based on Bluewater's allegations that Mazuma breached the lease agreement by failing to have a rewritten lease in place at the beginning of the thirteenth month of the lease.  For the reasons discussed below, Mazuma's motion is granted.

Bluewater's first claim for relief, breach of the lease agreement, is based on its argument that Mazuma breached the agreement by failing to rewrite the lease prior to commencement of the thirteenth month of the lease.  As discussed above, however, Mazuma's obligation to rewrite the lease never ripened for two reasons.  First, as discussed in detail above, Bluewater breached the lease prior to the time Mazuma's obligation arose, Bluewater's breach was material, and therefore excused Mazuma's performance under the rewrite provision.  Second, Mazuma placed

-19-

Bluewater on notice that it could not begin the rewrite process until Bluewater provided certain financial documents.  Accordingly, Mazuma's motion is granted with respect to Bluewater's first claim for relief, and the court dismisses that claim with prejudice.

Bluewater's second claim for relief, breach of the implied covenant of good faith and fair dealing, is also dismissed with prejudice.  Bluewater argues that this cause of action is based not on Mazuma's alleged breach of the lease agreement, but rather on Mazuma's failure to renegotiate in good faith.  Bluewater also argues that Mazuma's actions, particularly Mazuma's failure to rewrite the lease, deprived Bluewater of its benefits under the lease agreement.  But as stated above, Bluewater's own actions deprived it of its own benefits under the lease.  Mazuma's refusal to rewrite the lease occurred only after Bluewater materially breached the lease agreement and was told that the lease could not be rewritten without current financial documents that were required by the lease.  Furthermore, the lease explicitly provided that Mazuma could avoid further performance of its obligations under the lease if an event of default occurred.  As a matter of law, therefore, Mazuma could not breach the implied covenant of good faith and fair dealing since its duty to rewrite the lease never ripened.

Finally, Mazuma has moved for summary judgment on Bluewater's third claim for relief for fraudulent inducement.  Bluewater essentially argues that in order to convince it to enter into the lease, Mazuma represented that it would rewrite the lease on more favorable terms to Bluewater after 12 monthly base period payments had been received.  According to Bluewater, Mazuma had no intention of ever rewriting the lease.  Had Mazuma's obligation to rewrite the lease ripened, perhaps Bluewater's counterclaim could survive summary judgment.  But without such ripening, the Court can only speculate whether Mazuma would, or would not, have

performed in conformance with the terms of the lease agreement.  As Bluewater breached the

lease agreement before such performance could occur and knew no rewrite would occur until

after financial documents were received, Bluewater cannot prove that it was injured by, or acted

to its deteriment on, Mazuma's allegedly false representation.  In any event, Bluewater is unable

to sustain a claim for fraudulent inducement when the very inducement alleged by Bluewater

was included as an enforceable obligation in the written contract.  The appropriate claim in such

a case is one based in contract, not tort.  Mazuma's motion for summary judgment is granted and

the Court dismisses Bluewater's third claim for relief with prejudice.

## CONCLUSION

The facts in this case are largely undisputed.  Bluewater has repeatedly failed to comply

with the lease terms.  Bluewater's failure to make a single payment to Mazuma in the past eight

months is not only troubling, but cuts completely against its position that it wants to continue

with the lease.  Based on the undisputed facts in this case, Mazuma's motion for summary

judgment is GRANTED in part and DENIED in part.  As a matter of law, Bluewater materially

breached the lease agreement, relieving Mazuma of any duty to rewrite the lease.  Mazuma is

entitled to (1) immediate possession of the equipment, with proceeds from disposal to be

deducted from Bluewater's outstanding obligations, (2) damages of $1,055,400.12 for future

monthly payments during the base period, discounted at 7% per annum, (3) interest on

$1,055,400.12 at a rate of 18% per annum, accrued between July 22, 2008, and the date this

order is entered, (4) interest on $1,055,400.12, at a rate of 18% per annum from the date this

order is entered until that sum is paid, and (5) reasonable attorneys' fees and costs.  With respect

to damages sought for payments relating to the continuation period and for the alleged late fees,

Mazuma's motion is DENIED.  Finally, with respect to Bluewater's counterclaims, Mazuma's

motion is GRANTED and the counterclaims are DISMISSED with prejudice.

IT IS SO ORDERED.

Dated this 20th day of April, 2009.

Dee Benson
United States District Court Judge